UNITED STATES DISTRICT COURT
FOR DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT A. DOANE,<br><br>    Plaintiff<br><br>v.<br><br>ASTORIA COMPANY, LLC.,<br>SCOTT J. THOMPSON<br><br>    Defendants | )<br>)<br>) Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**
**(With Jury Demand Endorsed Hereon)**

Now comes Plaintiff, **ROBERT A. DOANE**, by and through undersigned counsel, and for his Complaint against Defendants **ASTORIA COMPANY, LLC. and SCOTT J. THOMPSON** states and avers as follows:

**INTRODUCTION**

Plaintiff, Robert A. Doane brings this complaint against Defendants Astoria Company, LLC. and Scott J. Thompson, seeking actual, statutory, and punitive damages for knowing and willful violations of the Telephone Consumer Protection Act, 47 U.S.C. §227, et seq. ("TCPA"), and violations of the Massachusetts Consumer Protection Act, G.L. c. 93A, et seq. ("MCPA").

**PARTIES**

1.    Plaintiff Robert A. Doane ("Doane" or "Plaintiff"), is, and was at all relevant times, a citizen of the Commonwealth of Massachusetts domiciled at 21 New Lane, West Tisbury, Massachusetts 01880.

2.      Defendant Astoria Company, LLC. ("Astoria") is a Delaware limited liability company, with its principal place of business located at 4657 Benavente Ct., Fort Worth, TX 76126.

3.      Defendant Scott J. Thompson ("Thompson"), the sole officer and control person of Astoria, is a citizen of the State of Texas with his residence located at 4657 Benavente Ct., Fort Worth, TX 76126.  At all material times, Thompson personally formulated, directed, controlled, had sole authority to control Astoria, and fully participated in the everyday business practices and activities of Astoria including specifically authorizing, directing and condoning each act complained of herein for his own personal financial gain.

4.      Whenever in this Complaint it is alleged that the Defendants committed any act or omission, it is meant that the Defendants' and/or Defendants' officers, directors, agents, servants, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, agents, servants, or employees.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action involves violations of the TCPA.  *Mims v. Arrow Fin. Servs., LLC.*, 132 S. Ct. 740 (2012).  This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law causes of action.

6.      This Court has personal jurisdiction over Defendants because Defendants conduct significant business in this District and have continuous and systematic contacts with this District through their telemarketing efforts that specifically target consumers in this District.  Further, the

wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## FACTUAL ALLEGATIONS

### A. Defendants' Operations

8. Astoria and its principal Thompson are Texas-based lead aggregators[1] that claim to own a "proprietary lead exchange platform" (the "Platform") which processes over 60 million business to consumer leads per month.

9. In order to generate leads to sell on the Platform and by way of call transfer, Defendants utilize agent overseas telemarketers (the "Telemarketers") to generate leads by blasting out millions of intrusive and harassing telemarketing calls to U.S. consumers using fictious names, caller-ID spoofing (a process that displaces the actual caller identification with a fake caller identification) and automatic telephone dialing systems ("ATDS").

10. At no point have the Telemarketers been registered with the Massachusetts Office of Consumer Affairs and Business Regulations as required by 201 C.M.R. § 12.04.

11. At all times relevant, Defendants had control over the Telemarketers' actions on their behalf. For example:

    a. Defendants limited the type of consumers the Telemarketers could solicit.

    b. Defendants restricted the geographical area within which the Telemarketers could solicit business.

    c. Defendants provided the scripts, websites and sales pitches for the Telemarketers.

---

[1] Until recently, Astoria was based out of Thompson's home in Dublin, California. Thompson relocated Astoria's operations to Texas in late 2020.

  d. Defendants instructed the Telemarketers with respect to the volume of telemarketing calls and the methods to be utilized.

  e. Defendants had day-to-day control over the Telemarketers' actions, including the ability to prohibit the Telemarketers from using an ATDS, illegal spoofing and other illegal methods to contact potential customers.

12. Prior to accepting leads from the Telemarketers, the Defendants did not require proof of express written consent and, in fact, have actual knowledge that the Telemarketers do not obtain express written consent prior to making telemarketing calls on Defendants' behalf.

13. Although Defendants either knew or should have known of the provisions of the TCPA, Defendants, at all relevant times, directed their Telemarketers to generate leads by using methods that violate the substantive provisions of the TCPA.

14. The calls placed to Plaintiff complained of herein were within the scope of the Telemarketers' job duties and the actual or apparent authority the Defendants provided to the Telemarketers.

15. At all relevant times, the Defendants profited from the Telemarketers' aforementioned efforts and ratified the actions of the Telemarketers by knowingly accepting the benefits of the Telemarketers' illegal activities.

  **B. Illegal and Harassing Calls to Plaintiff**

16. Plaintiff is an individual who suffers from chronic pain and a sleep disorder, and often sleeps during the day.  Plaintiff is also the trustee of several trusts, and at the time of the illegal calls in question, was the primary caretaker and power of attorney for his two elderly parents, and stepmother suffering from dementia.  In these capacities, Plaintiff was required to keep his

cellphone on his person at all times so he could attend to the needs of the trusts and direct the care of his family members.

17. At all times relevant, Plaintiff's cell phone number, 781-245-6577 ("Cell Phone")—which has been his home number since childhood—has been registered to a "do not call list" maintained by the Federal Trade Commission ("FTC") and the Massachusetts Do Not Call registry as Plaintiff does not wish to be disturbed and harassed by telemarketers.

18. Plaintiff's family and friends associate Plaintiff with his Cell Phone and Plaintiff's elderly parents, who can easily remember this number, relied on it to contact Plaintiff on daily basis.

19. In the days leading up to June 14, 2017, Plaintiff received, without his prior express written consent, not less than ten telephone calls ("Unsolicited Calls") to his Cell Phone, using "spoofing" and an ATDS, from the Telemarketers.

20. When Plaintiff would receive the Unsolicited Calls, he would hear a pause and a click before an avatar (prerecorded voice prompt) agent came on the line—facts that evidence of the use of ATDS.

21. In each of the Unsolicited Calls, the Telemarketers identified themselves as "US Home Improvements" and proceeded to attempt to sell Plaintiff home improvement products and services.

22. Following these Unsolicited Calls, Plaintiff would attempt to call back the number that appeared on his caller-id. These attempts were unsuccessful as the numbers that appeared on his caller-id were spoofed and were not working numbers.

23. Despite Plaintiff's requests that the calls stop, the Telemarketers continued to call incessantly often waking Plaintiff from his sleep, disrupting his concentration, causing him to lose focus and causing him aggravation and annoyance.

24. At no time during any of the Unsolicited Calls was it disclosed that the call was being recorded, nor was Plaintiff aware the calls were being recorded.

25. Becoming frustrated with the frequency of the Unsolicited Calls, after the first few calls, Plaintiff demanded a copy of the telemarketers' do-not-call policy which was never provided. Instead, in response to this demand, the telemarketers would disconnect the call.

26. On June 13, 2017 at 4:08 PM, Plaintiff received an Unsolicited Call. This call, like the preceding calls, commenced with a pause and a click sound before a Telemarketer came on the line and identified himself as "US Home Improvements" and commenced to list the home renovation and remodeling products and services that could be provided. In order to determine who was behind the numerous and unrelenting unsolicited calls that he has received to date, Plaintiff, when prompted, selected "windows" from the services offered. After doing so, Plaintiff was informed by the telemarketer that the telemarketer's contractor would be contacting Plaintiff within 24 hours.

27. Immediately following the June 13, 2017 call, Plaintiff attempted once again to call back the number that appeared on the caller identification, but it was a non-working number.

28. On June 14, 2017, Plaintiff received a call at 1:45 PM from a number appearing on his caller identification as "781-896-6325." The caller was female, had a foreign accent, and identified Plaintiff as "Robert". The agent claimed to be calling on a recorded line in response to an inquiry about windows, and the agent thereafter commenced to ask Plaintiff questions concerning his residence.

29.     During the course of the call on June 14, 2017, the aforementioned agent was asked by Plaintiff to identify herself.  The agent responded, claiming to be calling on behalf of "Coastal Windows and Exteriors".  The agent continued to ask questions about the windows and what was required.  The agent was then told by Plaintiff that she called Plaintiff at a bad time and was asked if she could be reached back at the number from which she dialed.  In response, the agent claimed an estimator would call within the next two to three hours to schedule an appointment.  At this point, the agent was asked again if she could be reached back at the number from which she called.  The agent responded stating, "unfortunately, this number isn't designed to receive calls so can I have our estimator call you later at a more suitable time?"  Without receiving an affirmative "yes" from Plaintiff, the agent continued asking questions about Plaintiff's home and confirmed the location.  The agent was thereafter informed by Plaintiff that he was terminating the call.

30.     On June 14, 2017 at 1:52 PM.  Plaintiff received a call from Collegiate Window Systems ("Collegiate") from a number appearing as 508-948-9804.  To confirm the identity of the party calling, an appointment was made with the principal of this contractor for the following day, June 15, 2017.  When this individual appeared at Plaintiff's residence, Plaintiff asked how Plaintiff's contact information was obtained.  In response, this individual indicated that "[e]verything is done through telemarketing and the internet these days."

31.     On June 14, 2017 at 2:13 PM, a call was received from a number appearing as 978-500-9699 from an individual who identified himself as Ernie with Coastal Windows and Exteriors ("Coastal") in Beverly, Massachusetts.  The call was terminated.  A few minutes later, another call was received by Plaintiff.  The call was not answered.  Minutes later, a third call was received from yet another number—978-998-4612—which was not answered by Plaintiff.  Both

7

numbers (978-500-9699 and 978-998-4612) were later determined to be numbers belonging to Coastal.

32. After receipt of a demand letter from Plaintiff, Collegiate informed Plaintiff that Collegiate had obtain the lead (the "Doane Lead') from Ecrux, LLC d/b/a the Quote Me Network ("Ecrux").

33. Plaintiff subsequently learned in 2021 from Ecrux that Ecrux purchased the Doane Lead from a California based lead generation company, Tetraop, Inc.  Plaintiff likewise was informed by Ecrux that Tetraop had acquired the Doane Lead from Match Media Group, LLC. of Florida who had in turn purchased the Doane Lead from Defendants.

34. Following receipt of the demand letter, on August 11, 2017, the principal of Ecrux contacted Thompson by text message and requested evidence of prior express consent in connection with the Doane Lead.

35. In response to Ecrux's inquiry, Thompson indicated by text message of August 12, 2017 that Plaintiff's personal identifying information ("PII") had come through the Platform on June 14, 2017. Thompson likewise admitted that Plaintiff's PII had also come through the Platform on June 24, 2017 via an overseas call center, The Ore Technologies of Rawalpindi, Pakistan.

36. In connection with the June 14, 2017 Doane Lead, Thompson likewise falsely represented to Ecrux by text message on August 12, 2017 that Plaintiff had given express written consent to be contacted by opting-in on a site owned and operated by Astoria, homeimprovementshopping.com. Specifically, Thompson attempted to fraudulently manufacture evidence of consent and falsely represented to Ecrux that Plaintiff had consented on this website on June 14, 2017 at 8:48 AM. Thompson did not provide Ecrux with Plaintiff's alleged IP address or any other information to demonstrate that Plaintiff had actually visited this website.

37. As Thompson had not provided Ecrux the IP address, Ecrux requested the "IP address with the time stamp". Thompson responded that he needed a "little time" to obtain this information from Defendants' server.

38. Three days later on August 14, 2017, and in an effort to avoid exposure of the fraudulent nature of the Doane Lead and appease Ecrux, Thompson falsely claimed that Plaintiff's IP address was 66.237.178.242.

39. Following receipt of the false information from Thompson, Ecrux's counsel claimed by letter of August 14, 2017 to Plaintiff as follows:

> Our investigation into this matter has revealed that Quote Me obtained the lead associated with your phone number only after you had provided prior express written consent to receive telemarketing phone calls from home improvement companies. Specifically, on June 14, 2017 at 8:48 a.m., you filled out a form on homeimprovementshopping.com, providing the following personal information:
>
> | | |
> |---|---|
> | First Name: | Robert |
> | Last Name: | Doane |
> | Email Address: | robertdoane@yahoo.com |
> | Phone Number: | 781-245-6577 |
> | Address: | 103 Prospect Street |
> | | Wakefield, MA 01880 |

Ecrux's counsel went on to state that "[t]he IP Address that was captured at the time that [Plaintiff] clicked the "Get Started!" button was 66.237.178.242".

40. Plaintiff's IP address has never been 66.237.178.242 nor has he utilized this IP address either directly or indirectly in any manner whatsoever.

41. Plaintiff states upon information and belief that the internet service provider ("ISP") for IP address 66.237.178.242 is Verizon Communications, Inc.

42. Plaintiff's ISP has never been Verizon Communications, Inc.

43. Plaintiff's email address has never been "robertdoane@yahoo.com".

44.     Plaintiff has never consented to received calls on homeimprovementshopping.com. Further prior to the calls in question, Plaintiff has never visited or even been made aware of the existence of this website.

45.     In July, 2020, Ecrux once again contacted Thompson by text as Ecrux had discovered that the IP address that Thompson had provided Ecrux was not valid. After mining Plaintiff's actual IP address from Plaintiff's email communications with Thompson, Thompson told Ecrux to use Plaintiff's actual IP address and suggested that Ecrux should falsely claim that Plaintiff had opted-in on the homeimprovementshopping.com website with this IP address as opposed to the phony IP address that Thompson had given him in 2017.

46.     Plaintiff was provided with evidence by Ecrux of Defendants' involvement with the Doane Lead and attempts to fraudulently generate evidence of consent in February, 2021. Prior to this disclosure, Plaintiff was not aware of the nature and extent of Defendants' involvement therewith.

47.     Following the aforementioned calls, Plaintiff learned that the Telemarketers had recorded conversations with Plaintiff without his knowledge or consent.

48.     As a direct and proximate result of Defendants' aforementioned illegal telemarketing activities, Plaintiff has suffered actual harm, including but not limited to, invasion of privacy, loss of concentration, loss of productivity, loss of sleep, annoyance, aggravation, emotional distress, diminished value and utility of his cell phone and subscription services, wear and tear to his cell phone, the loss of battery charge and battery life, and per-kilowatt electricity cost required to recharge his cellular telephone as a result of increased usage of his cell phone services.

49.     In addition to the foregoing, as a direct and proximate result of Defendants' aforementioned illegal telemarketing activities, Plaintiff was forced to identify those responsible to try and get the

illegal activities to cease, and in the process of doing so incurred expense in time, materials, and use of equipment.

## COUNT I
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A))**

50.     The allegations of paragraphs one (1) through forty-nine (49) of this Complaint are realleged and incorporated by reference.

51.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

52.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

53.     The TCPA defines ATDS as "equipment which has the capacity…to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

54.     According to findings of the Federal Communication Commission ("FCC"), the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

55.     The FCC requires prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. In *the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 ¶ 33 (2012).

56.     The FCC regulations "generally establish that the party on whose behalf a solicitation

is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 92-90, Memorandum and Order, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

57. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013) ("May 2013 FCC Ruling").

58. Defendants were legally responsible for ensuring that the Telemarketers complied with the TCPA even if Defendants did not make the calls themselves.

59. Defendants, by and through their agent Telemarketers, violated 47 U.S.C. §227(b)(1)(A)(iii) by placing calls to Plaintiff's Cell Phone using an automatic telephone dialing system ("ATDS"), without Plaintiff's prior express written consent.

60. Pursuant to 47 U.S.C. § 227(b)(3)(B), Defendants are liable to Plaintiff for a minimum of $500 per violation.

61. Pursuant to 47 U.S.C. § 227(b)(3)(C), willful or knowing violations of the TCPA trigger treble damages.

62. Defendants' conduct in violation of 47 U.S.C. §227(b)(1)(A)(iii) was willful and knowing.

63. Plaintiff is entitled to have his single damages trebled for the aforesaid willful and knowing violations of the TCPA.

## COUNT II
### (Violations of the Telephone Consumer Protection Act, §227(c)(1) to (4))

64. The allegations of paragraphs one (1) through sixty-three (63) of this Complaint are realleged and incorporated by reference.

65. A private right of action exists pursuant to 47 U.S.C. § 227(c)(5) for violations of the regulations promulgated pursuant to the TCPA for the protection of telephone subscriber privacy rights.

66. 47 C.F.R. § 64.1200(c) and (d) sets forth certain procedures with which a telemarketer must comply prior to the initiation of a telemarketing call.

67. Defendants did directly, and through their agent Telemarketers, violate C.F.R. § 64.1200 et seq. in the following respects:

    A. By failing to ensure that Defendants and the Telemarketers maintained a do-not-call list in violation of 47 C.F.R. § 64.1200(d)(1);

    B. By failing to provide Plaintiff, upon his demand, Defendants' and the Telemarketers' do-not-call policy in violation of 47 C.F.R. § 64.1200(d)(1);

    C. By failing to ensure that its personnel and the personnel of the Telemarketers were informed and trained in the existence and use of the do-not-call list in violation of 47 C.F.R. § 64.1200(d)(2);

    D. By failing to provide to Plaintiff the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and the telephone number or address at which the person or entity may be contacted in violation of 47 C.F.R. § 64.1200(d)(4); and

    E. By engaging in and causing a pattern or practice of initiating telephone solicitations to Plaintiff's Cell Phone without Plaintiff's express written consent in violation of 47 U.S.C. § 64.1200(c)(2).

68. Pursuant to 47 U.S.C.A. § 227(c)(5) and the regulations promulgated thereunder, Defendants are liable to Plaintiff for a minimum of $500 per violation of the TCPA.

69. Defendants' aforesaid conduct in violation of 47 U.S.C.A. § 227(c)(5) and the regulation promulgated thereunder, was willful and knowing.

70. Plaintiff is entitled under this count to have his single damages trebled for these willful and knowing violations.

### COUNT III
### Violations of the Massachusetts Consumer Protection Act, G.L. c. 93A
### And Request for Injunctive Relief

71. The allegations of paragraphs one (1) through seventy (70) of this Complaint are realleged and incorporated by reference.

72. At all times relevant, Defendants were engaged in trade or commerce within the meaning of M.G.L. c. 93A §2.

73. 940 C.M.R. § 3.16(4) provides that an act or practice violates M.G.L. c. 93A, §2 "if it violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other federal consumer protection statutes within the purview of M.G.L. c. 93A, s. 2".

74. The TCPA was promulgated for the protection of consumers.

75. 940 C.M.R. §3.16(3) provides that an act or practice violates M.G.L. c. 93A, §2 "if it fails to comply with existing statutes, rules, regulations, or laws, meant for the protection of the public's health, safety or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide consumers of this Commonwealth protection."

76. Defendants' and the Telemarketers' numerous violations of the TCPA (and the regulations promulgated thereunder) constitute unfair and deceptive conduct in violation of M.G.L. c. 93A, § 2.

77.     Defendants engaged in unfair and deceptive conduct, by knowingly and willfully contracting with Telemarketers, who Defendants either knew or should have known utilized illegal practices and methods, in order to attempt to solicit Massachusetts consumers in violation of the TCPA.

78.     Defendants, who chose to do business in Massachusetts, knew or should have known of the requirements and prohibitions of the TCPA (and its underlying regulations) and the applicable provisions of the Massachusetts Privacy Act and Massachusetts common law. Accordingly, Defendants' violations of M.G.L. c. 93A, § 2 were willful and knowing.

79.     Defendants and its agent Telemarketers further engaged in unfair and deceptive conduct by repeatedly violating Plaintiff's right to privacy, selling his personal information without his knowledge or consent, tape recording conversations with Plaintiff without his knowledge or consent and fraudulently manufacturing an alleged "opt-in" in an attempt to provide justification for illegal actions complained of.

80.     As a direct and proximate result of the aforementioned violations of M.G.L. c. 93A Plaintiff has suffered the harm set forth in paragraphs forty-eight (48) and forty-nine (49) above and other like and serious harm in an amount to be established at trial.

81.     Plaintiff states upon information and belief that as of the filing of this Complaint, Defendants' unlawful conduct in violation of the TCPA and Chapter 93A is continuing.  Said conduct, including the unsolicited, harassing and unlawful calls, as alleged herein, will continue, and will inflict further damage on Plaintiff and Massachusetts consumers, unless and until this Court, or another court of competent jurisdiction, issues an order directing Defendants to cease and desist from said conduct.

82. Accordingly, while monetary damages may be sufficient to compensate Plaintiff and for past violations, injunctive relief is necessary in order to stop Defendants' unlawful course of conduct from continuing.

**WHEREFORE**, as to all Counts, the Plaintiff requests that this Court:

1. Enter judgment for the Plaintiff against the Defendants jointly and severally;

2. Award Plaintiff his actual, compensatory, punitive and special damages in an amount exceeding $150,000.00 to be determined at trial;

3. Find that the Defendants are vicariously liable for the actions and omissions of their agent Telemarketers complained of herein;

4. Find that Defendants and their agent Telemarketers' actions complained of were willful, knowing, intentional, unfair, and deceptive, in violation of M.G.L. c. 93A and award Plaintiff treble damages;

5. Award Plaintiff his reasonable costs, expert fees, attorney fees and expenses;

6. Issue a permanent injunction, enjoining Defendants from additional and continuing violations of the TCPA and Chapter 93A; and

7. Award Plaintiff pre-judgment interest and such other and further relief as Plaintiff may be entitled at law or in equity.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY OF ALL CLAIMS SO TRIABLE.**

                          PLAINTIFF A. DOANE
                          By his attorney

                          <u>/s/RICHARD B. REILING</u>
                          RICHARD B. REILING, ESQ.
                          BBO # 629203
                          BOTTONE | REILING
                          63 Atlantic Ave., 3rd Floor
                          Boston, MA 02110
                          Phone:    (617) 412-4291
                          Facsimile: (617) 412-4406
                          richard@bottonereiling.com

Dated: June 14, 2021